Good morning, your honors. My name is David Zugman, and I'll be arguing the cause on behalf of the appellate, Robert Robinson. And unless your honors have a fascination with a particular issue, I'll take the issues as they were presented in the briefs. I will attempt to reserve a couple minutes for rebuttal should I not prove too loquacious. With respect to the first issue, the vouching issue, I think this is an interesting issue because it has a unique wrinkle, which goes to the standard of review. But before treading that ground, the first question is, when the issue of the vouching came up, the precise question was that outside of this case, outside of this case involving the defendant, have you had a chance to verify Mr. Williams' credibility on other occasions? Yes, on several occasions. Now, that is no question, that is vouching. Well, let's assume it's vouching. I mean, just for the sake of argument. Wasn't there still overwhelming evidence against your client? Well, I think that goes to the question. First, I think that indicates a standard of review. Yes. If it's harmless error. I don't believe so. And the reason is that Mr. Robinson, I mean, although there are tape recordings and whatnot, Mr. Williams, the informant in the case, has been conceded to be not credible in the sense that he previously lied to the police. He was not searched prior to the meetings with Mr. Robinson. It is possible, it is within the scope of reason, that Mr. Williams could be a Spengali of sorts, that he could be the one responsible for this, and Mr. Robinson just was chosen to be the unfortunate person who would be deemed to be his dealer. Now, recall Mr. Williams, in the first instance, had said that there was another man who was responsible for providing him with the OxyContin, and that turned out to be a lie. And then it turned out that he had a relationship with Mr. Robinson, Mr. Robinson having been a former patient of his. Now, I'm not going to say that the evidence against Mr. Robinson was somehow flimsy and that this is a case that ought to be easily thrown out. Well, there are two FBI agents and audio and video recordings that all serve to implicate him, would there not? Well, they serve to implicate him in the sense that they have recordings of Mr. Robinson on the phone with Mr. Williams and they have him meeting with him, although they don't have specific references to drugs outside of Mr. Williams' interpretations of those audio recordings. And the one time Mr. Robinson is caught with the OxyContin is after a meeting with Mr. Williams, where it's not entirely clear, at least there's not overwhelming visual evidence showing that Mr. Williams could not be the source of said OxyContin. So it's not an easy case. I'm not suggesting that I walk in and have a 10-minute acquittal in that kind of case. Your problem with the first issue is that the judge cut off the vouching for, and in the whole context it would be very difficult to get a reversal on that kind of an issue with his conviction. Your other issue, however, does raise some interesting and even possible constitutional issues. So I want you to be able to talk about that a little bit. Excellent. Are you referring to the second issue being the juror selection issue, or are you referring to the judicial questioning issue? There are two other issues. The rule 43, presence of the defendant issue, was the second issue raised in the brief. Well, he wanted to be present. He did. I'm talking about the right of the defendant to be present at defense conferences. Yes, Your Honor. That's kind of an unusual issue. Usually it's waived, and there is an express waiver by the defendant. You don't have that express waiver. There is no express waiver in this case. We have the opposite. And the question really is, could the lawyer waive the right of being up at the bench? And if he couldn't, what difference does it make? Is it really prejudicial? Well, there are two answers to that. The first is that it's clear that Mr. Robinson invoked his right to be present at the bench conferences. This is not a situation where Mr. Robinson was never asked, and then the lawyer at sidebar says, hey, he doesn't want to be here. He was asked. Mr. Robinson was specifically asked if he wanted to be present at the sidebars, and Mr. Robinson responded affirmatively. So what do we make of the fact that the sidebars went on, I'm going to presume, in front of Mr. Robinson and he didn't object or say, wait a minute, I invoked my right or make some other kind of noise at the time? Well, I think that puts too much onus on the defendant. After the defendant having expressly said, I want to be there, I don't think you can infer a waiver after that point from silence. Because what you have, and what's very clear what happened was after the first sidebar, the district court judge said to the lawyers, hey, if your client's going to come up here, he's going to come up here with the marshals, and I don't think you want to do that. And the lawyer said, oh, yeah, that's right. I don't want that to happen either. And that was not done in the presence of Mr. Robinson, nor is there any evidence in the record that was further discussed with Mr. Robinson. And as a consequence, I do think that this is the sort of procedural problem that ought to be remedied, because we can't have defendants excluded from some portions of this trial and say that's okay, because it would create a slippery slope. I'm wondering how many – how much time can a defendant be excluded from trial and we'll just call that harmless? It's wrong procedure. Well, I've been searching for cases. There is no case out there.  That's correct. I haven't found any case that has this unique set of facts. So whether or not this might be structural error. And the judge in the first instance invited him up. Correct. And the next instance did not invite him up. Correct. If he did not waive it, wouldn't you assume that he would make some objection at that point? Well, again, I think you're putting the onus on this. I mean, Mr. Robinson, for whatever acumen he has as a businessman, clearly,  and when the judge calls up counsel, we don't know from the record how that was done. We don't know whether the judge has pointed at the lawyer and said up here. There's all kinds of silence. The fact of the matter is this could have been taken care of if on the record the district court had done outside the presence of the jury, said hey, look, we have this sidebar. Is it okay? Was that okay with you? Did you have a discussion with your lawyer? None of that occurred. There were ways to determine whether this was a valid waiver or not. But the one thing we can be sure of is that the way the waiver was taken was invalid. You can't take a waiver at sidebar after the defendant expresses a desire to exercise a right no more than the defendant says hey, I want to testify, and later on in the trial the lawyer closes without testifying. I mean, this is a fundamental right. This is a right to be present at each stage of the trial. And this is not just a discussion of legal matters. This was voir dire. It was factual. It was whether you want to exercise a peremptory challenge or not. And that's the sort of proceeding that a defendant absolutely must be allowed to be present at if the defendant is to meaningfully. Well, let me just interrupt by asking you. The judge said, does your client want to be up here? Do you want to talk to him and see if he wants to come up here? And the lawyer said, he waives it. The court, do you believe it's an annoying voluntary waiver? Yes. Now, can't we assume from that that there have been some conversation, that the lawyer explained it's going to be very embarrassing if you come trotting up here with two marshals right by your side. It's going to look very suspicious of a really guilty person. Maybe you'd better let me handle it. You'd think he would have told him that. Well, isn't that a fair inference? Well, wouldn't you think he'd have told him that before the first invocation of the right to go up there? I mean, that's not a mystery. Everybody who has in-custody clients knows that if you're going to sidebar, you're going there with marshals. So one would presume if the lawyer were competent in that respect to have that sort of discussion, it had already been previously explained to Mr. Robinson prior to his invocation of the right to be present. Well, you're assuming that. Well, just as much as Your Honor is assuming that there was this other discussion, this antecedent discussion. And the record, I mean, the way the record reads, the judge brings it up. The judge says, hey, if you've got clients coming up here, you should come up here with marshals. What was the first sidebar conference about? Same thing. It was, yeah. It was all voir dire. Yes. Well, tell me, assuming that we review this for harmless error, how is your client prejudiced? I lose if it's harmless error. If it's harmless error because it was an alternate juror, I think the government is correct in saying there's no way that I can prove error. But I think this is a sort of structural error because it goes to the trial process. I just don't think you can start to exclude defendants from portions of trials because you're going to create a slippery slope. You're going to start getting retrospective waivers of defendants' rights. And that's just a very dangerous path to start to tread. Yeah, it is odd because when I was a district court judge, we always got the waiver in writing at the beginning. And every time I've tried a case, the judge has asked outside the presence of the jury and it's made clear. And it's one thing to say, look, if you want to come up here, you're coming up with marshals. But that didn't happen here. You're expressing vocation of the right. I'd like to reserve my remaining 23 seconds for any possible rebuttal. Okay. Thanks, Your Honor. Thank you. Good morning. May it please the Court. Bay Gilchrist for the United States. I'd like to reserve approximately one to two minutes for rebuttal if possible. You actually don't have rebuttal. This is your time to argue. And then he has 23 seconds or 21 seconds. Okay. Okay. With respect to the first question, the government's – I believe that the single question was improper, but there was ultimately unimportant in the context of this case. But it seems that the Court at this time is more concerned with the second issue, which is the issue of whether or not the defendant waived his right to be present at sidebars. With respect to that issue – Excuse me, counsel. May I go back to your first issue, vouching? Is the trial court's failure to offer a curative instruction on the vouching reversible error? The government doesn't believe so in this case. Because? Because several reasons. One, with respect to the harm that flew from the question, both the district court and the defense counsel neither asked for a curative instruction. The district court was present, had previously heard Dr. Williams testify on another issue, and had determined that – had had a chance to see him. Moreover, as the Court pointed out, there was overwhelming evidence in this case, and the Court gave curative instructions. That answers the question. Thank you. That's right. With respect to the second issue, whether or not the defendant waived his right to be present and whether or not there was a – whether or not we review that for a structural error or a harmless error, the government believes that it's a trial error, and it points to two cases that this Court has previously decided on the issue of whether or not the defendant's right to be present, if it's violated, results in a structural error or a trial error. It points to Campbell, which is an en banc decision of this panel, this Court, and also Lucien v. Spain. In Campbell, with facts that were far more egregious than this one, in which the defendant was represented by a defense counsel who was being prosecuted by the same prosecuting office as the defendant, and that was never disclosed to the defendant, it was only disclosed to the Court in brief snippets by the prosecution and defense counsel in an in-chambers conference. And this Court held that any error resulting from the defendant's exclusion from the in-chambers meeting was not structural error, but was instead trial error, subject to harmless error review. But in the Campbell case, had the defendant expressly requested the right to be present? No, he had not. All right. That distinguishes it from this case, does it not? Because there was an express request to be present. Well, I think that it does. That is a distinction, Your Honor. But I think it's important to recognize that in this case, the defense counsel stated, my client wants to be present, and then defense counsel later stated, my client has waived that right. And if we're to believe that defense counsel was correct when he initially stated my client wants to be present, there's no evidence to show that a subsequent discussion did not occur and that defendant didn't waive his right to be present as defense counsel represented to the Court. But the Court did suggest to defense counsel that he ought to put it on the record. Yes, Your Honor. And that was not done. Waiver was not put on the record. I think what defense counsel or what the Court was saying was that defense counsel should get that on the record that his client had waived it, whether it be through him or defendant explicitly. I don't think the district court felt he needed to get an express waiver from the defendant, although in hindsight, obviously, he should have. Moreover, with respect to the issue of structural error, the Second Circuit has also held that harmless error applies to the defendant's right to be present in sidebar conferences. And similarly, in Ruchin v. Spain, the Supreme Court, in a case in which one of the persons who were being discussed by a witness on behalf of defense counsel, and she knew that what they were saying wasn't true. And so that was brought to the attention of the district court, and the Supreme Court found that if any error occurred in not revealing that issue to defense counsel, allowing the defendant to be present for that, any error was harmless. Moreover, with respect to the third issue, whether or not the Court's supplemental questioning of a witness resulted in reversible error, the government believes that in this case the judge asked numerous questions, but none of those questions as I believe defense conceded in their brief, in and of themselves, showed a bias on behalf of the prosecution. Rather, the majority of them were rather open-ended, direct-exam-type questions that would be asked in a direct exam. For example, the district court asked what Exhibit 13 contained, what Exhibit 21 contained, how did the witness receive Exhibit 13. Right, so what he was actually doing was establishing a really important element of what the government needs to show, which is the chain of custody. And I don't know why the district court judge in this case felt he had to do the prosecutor's job in that way, but he seemed to do a pretty darn good job of establishing chain of custody. I mean, I wonder where the line is crossed between the district court sort of taking over and establishing an element of the government's case or being the impartial judge in the case. I think that's obviously an important question, Your Honor. And I think the line is whether or not the judge is just merely developing facts for the jury to make an ultimate decision, or as was the case in Alsa and Peña-Garcia's, is the court affirmatively stating that this witness isn't believable and I think this defendant is lying, or is it, as was the case in this case, just developing facts. The court has the right and the responsibility to develop facts in the record. There's nothing wrong with that unless it shows that they're biased. It's also important to consider that the court did ask questions of defense while defense was going as well. The court asked what the witness meant when she said, what does it mean when a scale has been calibrated? And he also asked whether there was a difference in weight amongst different oxycodone manufacturers. So it wasn't just during the defense, excuse me, it wasn't just during the government's direct examination that the district court asked questions, although the majority of them were during the district court's, excuse me, during the government's questioning. Moreover, the government recognizes that the district court provided some jury evidence that indicated that it was not to gleam or gather any inference as to bias or the government's, excuse me, the district court's position with respect to how the district court thought the case should come out by anything that the district court said or did. And in this case, in the absence of anything that shows that the judge was affirmatively attempting to make the government's case rather than clarify the case so that the jury could accurately judge the record and determine what the evidence was, this is not a ground to reverse. All right. Thank you. Does anyone have any other questions? Did you have any further questions, if not all? I don't think so. Thank you very much. Thank you. 21 seconds. Two quick points. First is, with respect to the judicial questioning, it really ought to be a discouraged practice. That should be clear to district court judges. What was that again? The judicial questioning, it ought to be a discouraged practice. It should be made clear. Well, I agree it ought to be discouraged, but that's different from saying it's a matter of reversal. I think it should be reversed, too, but if I can't get that, I'd go for discouragement. With respect to Campbell v. Rice, that's in the DEPA case, so the standard of review is different. It doesn't pertain to whether this ought to be considered structural under direct review. Thanks, Your Honors. All right. Thank you very much. The case of U.S. v. Robinson is submitted. We'll take a very, very brief recess while Judge Prayerson gets settled up here. Thank you. All rise for standard recess. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Nelson, Wardlaw, Bright